# IN THE COURT OF APPEALS OF IOWA

No. 17-2062
Filed January 23, 2019

IN RE THE MARRIAGE OF JULIE ANN GAYNOR
AND WILLIAM JEFFREY GAYNOR

Upon the Petition of
JULIE ANN GAYNOR n/k/a JULIE ANN MEYER,
        Petitioner-Appellant,

And Concerning
WILLIAM JEFFREY GAYNOR,
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Pottawattamie County, Jeffrey L.

Larson, Judge.


        A former wife appeals an order modifying the child support and post-

secondary-education subsidy provisions of the dissolution decree.  **REVERSED**

**AND REMANDED.**


        Julie Ann Meyer, Oakland, self-represented appellant.

        J. Joseph Narmi, Council Bluffs, for appellee.


        Considered by Vogel, C.J., Tabor, J., and Danilson, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**TABOR, Judge.**

Julie Meyer appeals the district court ruling on her petition to modify the 2010 decree dissolving her marriage to William Gaynor. Her petition, filed in June 2017, asked the court to determine postsecondary-education subsidies for their two children, R.G. (now age twenty) and C.G. (now age eighteen).[1] The court reserved jurisdiction to do so in the decree.

In November 2017, without holding a formal hearing, the district court ordered William to pay postsecondary-education subsidies of $1000 for R.G. and $3000 per year for C.G.'s sophomore, junior, and senior years in college. In its findings of fact, the court stated William agreed to those amounts.

The order also included the following findings of fact:

> 3. The dissolution decree specifically states that child support would end when the children reach the age of 18 or graduate from high school.
> 4. All of the children were homeschooled and therefore all of them graduated from high school before they reached the age of 18.
> 5. The language of the dissolution decree and Iowa law would require that child support terminate when each of these children graduate from high school.
> 6. William continued to pay child support after the children graduated from high school and after they started their college education.

On appeal,[2] Julie asks us to "reassess the amount of postsecondary education subsidy attributed to William and modify the order to require that both parents share equally in this responsibility." *See* Iowa Code § 598.21F (2017). She also argues the district court mistakenly concluded William's child support

---

[1] Julie also asked the court to require William to maintain health and dental insurance for the children for so long as they qualified to be on his plan. Her appeal does not challenge the modification ruling on the medical-support issue.

[2] Julie is representing herself on appeal, but had counsel in the district court proceedings.

obligation ended when the children graduated from high school before they reached the age of majority. She contends that conclusion in the modification order resulted in William prematurely stopping his child support payments for the nine months preceding C.G.'s eighteenth birthday.

For his part, William contends we cannot reach Julie's issues because she did not raise them in the district court. He urges dismissal of the appeal.

We review dissolution modification proceedings de novo. *Christy v. Lenz*, 878 N.W.2d 461, 464 (Iowa Ct. App. 2016). We are not bound by the fact findings of the district court but normally we give them weight considering the court's "firsthand opportunity to hear the evidence and view the witnesses." *Id.*

But our review here is hindered by the absence of any factual record. In his appellee's brief, William's counsel chastises Julie for reciting facts in her appellant's brief that "are not part of the current record." *See* Iowa. R. App. P. 6.903(2)(f). Then showing inconsistency in his own adherence to the rules, counsel quotes from Julie's brief for the proposition that the modification order resulted from "an agreement of the parties" and once the court's "conclusion had been made clear, Julie accepted the settlement offer . . . ."

No settlement agreement or stipulation appears in our record.[3] The order states the matter "came before the court for final hearing" and indicates the court

---

[3] If we did have a record of a stipulation between the parties, it would be "tantamount to a consent decree" on the issues addressed. *See In re Marriage of Ask*, 551 N.W.2d 643, 645 (Iowa 1996). The court could accept or reject the stipulation after considering whether it was "an appropriate and legally approved method of disposing of the contested issues in the litigation." *Id.* (quoting *In re Property Seized Nov. 14-15*, 501 N.W.2d 482, 485 (Iowa 1993)). After the parties acknowledge on the record they understand and agree to all the provisions of a stipulation, and the court approves it, a party has no legal right to repudiate it. *Id.* at 646. Here, we do not have a record of William and Julie both understanding and approving all provisions addressed in the modification order. We also acknowledge the

"reviewed the file" but does not detail the evidentiary basis for the ruling. Our trial court record does list fifteen "proposed exhibits." But it does not show the parties offered those exhibits or that the district court admitted them. *See Leo v. Leo*, 213 N.W.2d 495, 497–98 (Iowa 1973) ("In equity proceedings all evidence offered must ordinarily be received in order to preserve it for the record. . . . This procedure allows the appellate court, if it finds error in its de novo review, to decide the case on the record without a remand.").

In its findings of fact, the court mentions one of those proposed exhibits— an August 2016 letter from Julie's attorney to William's attorney offering to allow William to pay $3000 per year toward R.G.'s postsecondary education. The court then describes William's agreement to certain postsecondary education subsidies for both children, without documenting the source of his agreement or whether Julie was likewise in agreement:

> William has agreed to pay $3,000 per year toward CG's post-secondary education for his sophomore, junior and senior year for so long as he stays in school for a total of $9,000. In addition, William has agreed to contribute $1,000 toward RG's post-secondary education despite the fact that he continued to pay her child support after she graduated from high school. These payments may be made to the school or to the child at William's discretion.

The court's use of the phrase "despite the fact" links back to its finding that the decree and state law both require "that child support terminate when each of these children graduated from high school." In her appellate briefing, Julie argues the district court misinterpreted both the language of the decree and Iowa law.

---

shortage of court reporters may have hindered the making of a record. But in such circumstances, the parties should at least sign a proposed order indicating their approval as to the form so a written record of the agreement exists. Without that record, we are unable to determine if one of the parties had a change of heart.

The original decree ordered William to pay child support in the amount of $2000 per month until Julie's older daughter from a different relationship "graduates from high school or reaches the age of 19 or stops pursuing a high school diploma on a full-time basis, whichever is the first to occur, then the child support shall be reduced to $1,500 per month." The decree further stated:

> When [R.G.] reaches the age of 18 or graduates from high school and has not yet reached the age of 19, the child support shall be reduced to $1,000 per month. The child support shall continue for the final child until that child reaches the age of 18, dies or otherwise becomes emancipated. The child support shall continue for that child until the child is 19 years of age if the child continues to pursue a high school diploma on a full-time basis and has not yet graduated.

Julie reads this provision as obligating William to pay child support for R.G. and C.G. until they turned eighteen—or until they turned nineteen if they had not yet graduated from high school. She contends the district court misread the decree by entering "a ruling that allowed William to stop paying any child support for the minor child, C.G., who had graduated from high school at age sixteen and was still only seventeen at the time the modification was entered." Julie also asserts neither child was emancipated before reaching the age of majority.

As for state law, Julie argues the court's interpretation conflicts with Iowa Code section 252A.3(1), which holds a spouse liable for the support of any child under eighteen years of age. And she notes that obligation includes support "between the ages of eighteen and nineteen years if the child is engaged full-time in completing high school graduation." Iowa Code § 252A.3(2). But the statute does not suggest the inverse is true—that a parent would be free from a support obligation if the child graduated from high school before turning eighteen. *See id.*

To bolster her interpretation of section 252A.3(2), Julie cites the code provisions on postsecondary-education subsidies, which are not available until a child turns eighteen. *See* Iowa Code §§ 598.1(8), 598.21F. She argues it would be inequitable and not in the children's best interests to excuse William from paying child support after their high school graduations but before they are eligible for the postsecondary education subsidies.

Before reaching the substance of Julie's claims, we must first address William's error-preservation argument. He contends we cannot decide Julie's issues because they "were not raised and addressed at the district court level." He insists even if Julie did raise the issues, and the district court failed to rule on them, then she was remiss in not requesting a ruling under Iowa Rule of Civil Procedure 1.904(2) to preserve error for appeal.

It is true "issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). The error-preservation requirement ensures appellate courts don't analyze issues without the benefit of a full record and a district court determination. *Id.*

But we are not lacking a district court determination here. Instead, the district court's findings of fact addressed an issue—the cessation date for William's child support—that went beyond the modifications Julie requested in her petition. As Julie explains in her reply brief, her appellate arguments "all stem from the district court's ruling terminating child support before a child's eighteenth birthday which is in conflict with state law and places an inequitable financial burden on the supporting parent." Where an issue has been "tacitly considered and ruled upon

by the district court, error has been preserved." *See State v. Brooks*, 760 N.W.2d 197, 202 (Iowa 2009) (finding claim preserved where "neither party explicitly raised the privacy issue . . . nonetheless, after hearing the evidence, the district court squarely ruled on the issue"). We hold Julie may challenge the adverse findings of fact and conclusions of law in the district court's order.

That said, we are ill-equipped to resolve her challenge on this record. Julie, as the appellant, has the duty to provide a record for the appeal "affirmatively disclosing the alleged error." *See In re Marriage of Ricklefs*, 726 N.W.2d 359, 363 (Iowa 2007). Our supreme court has advised district courts and lawyers "to have all conversations reported when those conversations turn to the merits of the controversy." *Id.* (citing Iowa R. Civ. P. 1.903, requiring all trial proceedings to be reported) (affirming based on failure to preserve error). But unlike the appellant in *Ricklefs*, Julie is not basing her challenge on "unreported remarks by a trial judge." *Cf. id.* at 360. Instead, she grounds her appeal on the district court's written findings of fact.

The trouble is we don't know how the court reached those findings without an evidentiary hearing on the record. While the order states the parties came before the court for a final hearing, the parties both say no hearing occurred. And no waiver of hearing appears in our record. Any modification of the support order is void unless the court approves the changes after giving the parties "proper notice and opportunity to be heard." Iowa Code § 598.21C(3); *see In re Marriage of Seyler*, 559 N.W.2d 7, 9 (Iowa 1997) ("Due process mandates that persons who are required to settle disputes through the judicial process 'must be given a

meaningful opportunity to be heard.'" (quoting *Boddie v. Connecticut*, 401 U.S. 371, 377 (1971)).

If the parties had presented a stipulation to the court, the court retained power to reject that stipulation if it was "unfair or contrary to law." *See Marriage of Ask*, 551 N.W.2d at 645. Julie makes a strong case that the plain language of the decree ensured child support for R.G. and C.G. until they reached "the age of eighteen, died or otherwise became emancipated" even if they finished high school while still minors. State law also mandates noncustodial parents pay support until their children reach the age of eighteen, or age nineteen if still pursuing a high school degree. Iowa Code § 252A.3.

As they stand, the court's findings of facts and conclusions of law are unsupported by the record. The findings also address questions of child support not raised in the modification petition. *See In re Melodie L.*, 591 N.W.2d 4, 7 (Iowa 1999) ("Any unauthorized action taken by a court is void."); *see also In re Pickering*, No. 98-598, 1999 WL 1255718, at *3 (Iowa App. Dec. 27, 1999) (reversing district court ruling when modification of child support was not within father's pleadings and was adverse to his interests).

Therefore, we reverse the district court's order and remand for a new trial on Julie's petition for modification of the decree on the issue of postsecondary-education subsidies for the two children. *See In re Marriage of Swanson*, No. 05-1953, 2006 WL 3313896, at *2 (Iowa Ct. App. Nov. 16, 2006) (remanding to district court for retrial of child support issue involving question of child's emancipation).

Finally, we turn to William's request for appellate attorney fees. In modification proceedings, the district court "may award attorney fees to the

prevailing party" in a reasonable amount. Iowa Code § 598.36. That provision also gives us discretion to award appellate attorney fees. *In re Marriage of Michael*, 839 N.W.2d 630, 639 (Iowa 2013). We consider the parties' respective abilities to pay, whether a party resisting the modification petition was successful, and whether a party has been obliged to defend the district court's decision on appeal. *Id.* After considering these factors, we believe William should pay his own attorney fees. We divide the appellate costs equally between the parties.

**REVERSED AND REMANDED.**